Citation Nr: 1536763 
Decision Date: 08/27/15 Archive Date: 09/04/15

DOCKET NO. 05-10 800 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Philadelphia, Pennsylvania


THE ISSUES

1. Entitlement to service connection for pulmonary tuberculosis, to include residuals.

2. Entitlement to service connection for asthma, to include as secondary to pulmonary tuberculosis.

3. Entitlement to a total disability rating based on individual unemployability as a result of service-connected disabilities (TDIU).


REPRESENTATION

Veteran represented by: Robert Goss, Attorney


WITNESS AT HEARING ON APPEAL

Veteran

ATTORNEY FOR THE BOARD

J. Gallagher, Associate Counsel


INTRODUCTION

The Veteran served on active duty from May 1970 to July 1970.

This appeal is before the Board of Veterans' Appeals (Board) from a February 2004 rating decision of the abovementioned Department of Veterans Affairs (VA) Regional Office (RO).

In August 2006, the Veteran testified during a Board hearing in Philadelphia, Pennsylvania, before a Veterans Law Judge who is no longer employed by the Board. A transcript is included in the claims file.

The Board denied the Veteran's claims in a November 2006 decision. The Veteran appealed the denials to the United States Court of Appeals for Veterans Claims (Court). In March 2010 memorandum decision, the Court vacated the Board decision and remanded the matter for further Board review and action consistent with the Court's opinion.

In March 2011, the Board remanded the Veteran's appeal to the RO with instruction to conduct further development, including scheduling the Veteran for a VA examination of his claimed conditions. The RO complied with these instructions, and a VA examination was conducted in April 2011. In July 2013, the Board again remanded to fulfill the Veteran's request for a second Board hearing.

In May 2015, the Veteran testified during a second Board hearing in Philadelphia, Pennsylvania, before the undersigned Veterans Law Judge. A transcript is included in the VBMS electronic claims file.

The Board notes that in a February 2015 communication, the Veteran's representative requested that a Decision Review Officer hearing at the RO occur prior to his second hearing before the Board. There is no record of such a hearing occurring. The Board recognizes that the Veteran may have been improperly denied an RO hearing. 38 C.F.R. § 3.103(c)(1). In absence of any demonstration of prejudice to the Veteran, however, any error is presumed to be cured by the Veteran's second Board hearing. Bowen v. Shinseki, 25 Vet. App. 250, 253-54 (2012).

The Board finds that the VA examination was adequate to evaluate the Veteran's claimed conditions and that the May 2015 Board hearing fulfills the Veteran's request for a hearing. The Board is therefore satisfied that the instructions in its remands of March 2011 and July 2013 have been satisfactorily complied with. See Stegall v. West, 11 Vet. App. 268 (1998).


FINDINGS OF FACT

1. Clear and unmistakable evidence shows that pulmonary tuberculosis preexisted service and was not aggravated during service. 

2. There is no credible evidence of an in-service event, injury, or disease potentially related to the Veteran's current asthma.

3. The Veteran is not service-connected for any disabilities, and service-connected disabilities have therefore not rendered him unemployable/unable to secure and follow a substantially gainful occupation.


CONCLUSIONS OF LAW

1. The criteria for service connection for pulmonary tuberculosis have not been met. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2014).

2. The criteria for service connection for asthma, to include as secondary to pulmonary tuberculosis, have not been met. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.310 (2014).

3. The criteria for TDIU have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.15, 4.16, 4.19 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist
 
Under applicable criteria, VA has certain notice and assistance obligations to claimants. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). In the present case, required notice was provided by letters dated September 2003 and April 2012. See Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004); Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 486 (2006). 

As to VA's duty to assist, all necessary development has been accomplished. See Bernard v. Brown, 4 Vet. App. 384 (1993). The Veteran's service treatment records have been obtained, as have social security disability records and relevant private medical records identified by the Veteran. 

The Veteran was provided a VA examination of his claimed tuberculosis in April 2011. The Board finds that this examination and its associated report were adequate. Along with the other evidence of record, they provided sufficient information to decide the appeal and a sound basis for a decision on the Veteran's claim. The examination report was based on examination of the Veteran by an examiner with appropriate expertise who thoroughly reviewed the claims file. 38 C.F.R. § 3.159(c)(4); Barr v. Nicholson, 21 Vet. App. 303 (2007). The Board notes that in his May 2015 brief the Veteran argues that this examination was inadequate. These arguments are addressed in the merits portion of this decision.

The Veteran has not been provided with a VA examination specifically directed towards asthma. VA has a duty to provide a medical examination where there is (1) competent evidence of a current disability or symptoms thereof; (2) evidence establishing that an event, injury, or disease occurred in service; (3) an indication that the disability is associated with service; and (4) insufficient competent medical evidence to decide the claim. McLendon v. Nicholson, 20 Vet. App. 79, 81 (2006); see 38 U.S.C.A. § 5103A(d)(2) (2002); 38 C.F.R. § 3.159(c)(4)(i). As explained below, the Board finds that there is no credible evidence of an event, injury, or disease potentially related to asthma that occurred in service, and VA therefore has no duty to provide a medical examination.

Therefore, VA has satisfied its duties to notify and assist, additional development efforts would serve no useful purpose, and there is no prejudice to the Veteran in adjudicating this appeal. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994).

Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection requires: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see also Caluza v. Brown, 7 Vet. App. 498 (1995). Service connection may also be granted for any disease diagnosed after discharge when the evidence establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Service connection is also warranted for a disability which is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a). Such secondary service connection is warranted for any increase in severity of a nonservice-connected disability that is proximately due to or the result of a service-connected disability. 38 C.F.R. § 3.310(b).

Normally, manifestation within specified time limits gives rise to a presumption of service connection for certain chronic disease such as tuberculosis. 38 C.F.R. §§ 3.307(a)(3), 3.309(a). These provisions are not applicable when, as here, the Veteran has served less than 90 days. 38 C.F.R. § 3.307(a)(1). 

When a chronic disease is not shown within one year after service, under 38 C.F.R. § 3.303(b) for the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity and sufficient observation to establish chronicity at the time. When the fact of chronicity in service is not adequately supported, a showing of continuity after discharge is required to support a claim for such diseases; however, such continuity of symptomatology may only support a claim for those chronic diseases listed under 38 C.F.R. § 3.309(a). 38 C.F.R. § 3.303(b); see Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

When determining service connection, a presumption of soundness ordinarily applies. 38 C.F.R. § 3.304(b). Pursuant to such presumption, a Veteran will be considered to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at entrance into service, or where clear and unmistakable (obvious or manifest) evidence demonstrates that an injury or disease existed prior thereto and was not aggravated by such service. Wagner v. Principi, 370 F.3d 1089, 1096 (Fed. Cir. 2004); Horn v. Shinseki, 25 Vet. App. 231, 234 (2012). Only such conditions as are recorded in examination reports are to be considered as noted. Aggravation may not be conceded where the disability underwent no increase in severity during service on the basis of all the evidence of record pertaining to the manifestations of the disability prior to, during, and subsequent to service. See 38 U.S.C.A. § 1153; 38 C.F.R. §§ 3.304, 3.306(b). A pre-existing disease or injury will be presumed to have been aggravated by service only if the evidence shows that the underlying disability underwent an increase in severity; the occurrence of symptoms, in the absence of an increase in the underlying severity, does not constitute aggravation of the disability. See Davis v. Principi, 276 F.3d 1341, 1345 (Fed. Cir. 2002); 38 C.F.R. § 3.306(a). Furthermore, temporary or intermittent flare-ups of a pre-existing condition during service are not sufficient to be considered aggravation of the condition, unless the underlying condition, as contrasted to symptoms, worsens. See Jensen v. Brown, 4 Vet. App. 304, 306-07 (1993); Hunt v. Derwinski, 1 Vet. App. 292 (1991).

Notwithstanding any other provision of law, for claims filed after June 9, 1998, a Veteran's disability or death shall not be considered service-connected on the basis that it resulted from injury or disease attributable to the Veteran's use of tobacco products during service. 38 U.S.C.A. § 1103(a); 38 C.F.R. § 3.300(a). This provision does not preclude the establishment of service connection for a disability or death from a disease or injury which is otherwise shown to have been incurred or aggravated in military, naval, or air service or which became manifest to a requisite degree of disability during any applicable presumptive period. 38 U.S.C.A. § 1103(b); 38 C.F.R. § 3.300(b).

In determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the claimant prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination, the benefit of the doubt is afforded the claimant.

Pulmonary Tuberculosis

The Veteran claims service connection for pulmonary tuberculosis.

Service treatment records include enlistment examinations in April 1970 and May 1970, when the Veteran did not report any past or current tuberculosis. There is no indication of a tuberculosis test at either examination, and tuberculosis was not then detected. In two enlistment reports of medical history in April 1970 and May 1970, the Veteran specifically denied having had tuberculosis. 

The Veteran entered service on May 28, 1970, and just a few days later on June 3, 1970, he was determined by physical screening to be unfit for military training. A June 30, 1970, medical evaluation diagnosed tuberculosis and recommended discharge from service. The Medical Board findings indicate that in the first week of training the Veteran complained of pain in his left side and was treated symptomatically, with x-rays read as normal. The Veteran then reported that he had been treated for tuberculosis, and the service medical board obtained and reviewed these records from the Department of Public Health in Philadelphia, Pennsylvania, showing that the Veteran had a recent, extensive tuberculosis history. As reflected in these records, the Veteran had been hospitalized in 1966 for pulmonary infiltrate, was seen and treated again in 1968 for reactivation of tuberculosis process, and was seen again in 1969 with a diagnosis of far-advanced pulmonary tuberculosis, for which he received triple therapy. The last positive smear for acid-fast organisms was in July 1969. The Veteran was seen again in January 1970, when it was determined that the pulmonary process was quiescent, and medication was stopped. These public health records showed that the Veteran had thereafter sought treatment for tuberculosis at irregular intervals, and that he had missed appointments with the public health clinic. 

The Veteran underwent examination for the June 30, 1970, Medical Board report, with auscultation of the lung fields normal, chest x-rays within normal limits, and the remainder of the physical examination normal. Nonetheless, the Medical Board recommended medical discharge based on unfitness, due to tuberculosis existing prior to service under Army Regulation 40-501 ¶ 2-25(b) (1968) (Pulmonary tuberculosis active within the past 5 years). The Veteran was separated from service effective July 6, 1970. 

The Veteran in August 2006 hearing testimony contended that his tuberculosis had been detected in service, that he then underwent a period of physical therapy in service to increase his fitness for duty. He added that he then attempted physical training in service, but this training increased the severity of his tuberculosis, and he was accordingly discharged from service. Specifically, the Veteran stated that his training caused him to suffer lung pain and bloody sputum. However, the service medical records do not support this version of events. Rather, the service medical records clearly and unmistakably show symptoms of pain attributed to tuberculosis essentially as soon as the Veteran entered service and attempted physical training. The service medical records indicate continued quiescence of the disease, with no objective findings upon examination for the June 30, 1970, Medical Board report, with unfitness based on document extensive pre-service history of tuberculosis. 

The Veteran underwent a VA examination in April 2011. The examiner found rales and rhonchi of the right lung with diminished breath sounds. The left lung appeared clear. By history, the Veteran's lung cavity and effusion were on the right. The examiner found that pulmonary function tests showed severe impairment with obstruction, with moderate to mild diffusion impairment. The examiner found that there was no evidence of tuberculosis at this time. The examiner further opined that there was no evidence that service exacerbated the Veteran's preexisting pulmonary tuberculosis. The examiner opined that residuals noted by auscultation bore no relationship to service, but were rather residuals of the initial, pre-service episode. The examiner further stated that post-service exacerbation of lung function was more likely than not the result of the Veteran's smoking, as the Veteran smoked more than one pack a day for 20 years, having quit 25 years prior to the exam. In a June 2012 addendum to the examination report, the examiner provided a rationale that the in-service bout of tuberculosis was not a permanent aggravation but rather a temporary re-emergence likely caused by the Veteran irregularly taking his medication.

Private treatment records reflect that the Veteran sought treatment for shortness of breath in October 2013. X-rays showed a clear left lung, with focal pleural thickening in the right upper hemithorax and fibronodular changes in the right upper lobe with associated volume loss manifested by elevation of the right hemidiaphragm and right hilar structures as well as slight tracheal deviation. The Veteran's physician stated that the findings were likely related to chronic tuberculosis, and that active tuberculosis could not be excluded.

At his May 2015 hearing, the Veteran stated that his current disability was trouble breathing. His attorney stated that he did not have current tuberculosis, but his current disability was asthma. The Veteran denied that he had tuberculosis prior to service, but stated that he started coughing up blood and sputum after he began basic training and was discharged due to tuberculosis.

The Veteran has also provided as an addition to his May 2015 brief a scholarly article explaining tuberculosis, including the difference between latent and active tuberculosis.

The Board notes that the Veteran's attorney argues in his May 2015 brief that the "original disability board and every rater since 1970" has committed clear and unmistakable error (CUE). The Board does not construe this as a separate claim for CUE, because there is no RO or Board decision in which to allege CUE. The "original disability board" was an in-service Medical Board not subject to review by VA, and there are no final Board or RO rating decisions on record, as the February 2004 rating decision is the subject of this appeal and therefore not final, the November 2006 Board decision was vacated by the Court, and the March 2011 and July 2013 Board decisions were remands. With no final decisions on the record, there can be no claim of CUE. 

The Board further notes that the May 2015 brief argues that the Board should date the Veteran's claim back to his discharge, thus considering all manifestations of tuberculosis since discharge to be a current disability for the purposes of service connection. The brief claims that the Board should do so because the Veteran filed a claim for service connection for tuberculosis immediately upon discharge. The Board finds no record that such a claim was filed, and thus considers only manifestations of tuberculosis since the filing of the Veteran's September 2003 claim in determining the existence of a current disability.

In addition, the Board recognizes that the May 2015 brief presents argument that service connection should be granted because the Veteran has had a continuity of symptomatology under 38 C.F.R. § 3.303(b). This regulation, however, is inapplicable in the face of clear and unmistakable evidence that pulmonary tuberculosis preexisted service and was not aggravated during service. 38 C.F.R. § 3.304. A showing of continuity of symptomatology is irrelevant to a condition preexisting service; the question is not whether the Veteran's current symptoms are related to his in-service condition, but rather whether his in-service condition was aggravated by service. The Board further recognizes that the May 2015 brief argues for presumptive service connection under 38 C.F.R. §§ 3.307, 3.309(a). As discussed above, however, these regulations only apply to periods of service of 90 days or longer. 38 C.F.R. § 3.307(a)(1). 

The May 2015 argues that the April 2011 VA examination was inadequate for a number of reasons. 

First, the brief argues that the April 2011 examination and June 2012 addendum were inadequate because the examiner's report contradicted itself. Specifically, the brief maintains that the examiner stated that the Veteran's tuberculosis became active for six weeks during service, yet concluded that latent tuberculosis was not the result of service. The Board sees no contradiction. The examiner noted that the Veteran's tuberculosis predated the Veteran's service, but in-service symptoms of a pre-existing condition need not lead to the conclusion that service caused or aggravated the underlying condition. 

Second, the brief argues that the April 2011 examination was inadequate because the failed to consider the regulations for chronic diseases. As discussed above, however, the Board finds that the regulations for chronic diseases are irrelevant to the question of aggravation. 

Third, the brief claims that the April 2011 examiner erred in stating that the Veteran smoked for more than 20 years, when the Veteran in fact stated that he quit smoking over 20 years prior. The Board finds that both are true, as the Veteran's VA treatment records indicate that he quit smoking in the early 1990s, having smoked for 20 years prior to then.

Fourth, the brief argues that the April 2011 examiner failed to ask the Veteran about pulmonary symptoms related to tuberculosis, which under the Merck Manual include productive cough, chest pain, and night sweats. Similarly, the brief notes that the examiner failed to obtain a chest x-ray, sputum culture, and smear for diagnosis and evaluation of tuberculosis. The brief further states that each of the examiner's findings is factually false, and that the examiner failed to follow up on clinical evidence. The Board is not persuaded by these arguments. As an initial matter, the Board finds that the examiner is entitled to use his medical experience and expertise to draw conclusions from the medical history. See Cox v. Nicholson, 20 Vet.App. 563, 569 (2007) ("[A] person who is qualified through education, training, or experience [may] offer medical diagnoses, statements, or opinions."). Although the Veteran cites medical literature from the Merck Manual regarding active tuberculosis, the Veteran fails to demonstrate why the examiner was required to discuss these medical resources. See Sacks v. West, 11 Vet.App. 314, 317 (1998) (noting that treatise materials generally are not specific enough to show nexus); Herlehy v. Brown, 4 Vet.App. 122, 123 (1993) (noting that medical opinions directed at specific patients generally are more probative than medical treatises). The VA examiner was thus not bound by the testing methods endorsed by the Merck Manual. Furthermore, the Board's decision below is based on a question of in-service aggravation, and the examiner's conclusions as to the Veteran's current condition are irrelevant to that question. The Board therefore finds the VA examination report adequate to address the question of whether the Veteran's pulmonary tuberculosis was aggravated by service.

Finally, the brief questions the credentials of the April 2011 VA examiner, arguing that the report, despite identifying the examiner as the "examining physician," never provided credentials (i.e., MD, PA, NP, LVN) after the examiner's name, J.B. (identified by initials only, to protect the Veteran's confidential medical information and identity). The Board disagrees, and finds that the evidence is sufficient to establish that the examiner is a physician. There is a presumption that in the absence of clear evidence to the contrary, public officers are properly discharging their official duties. Miley v. Principi, 366 F.3d 1343, 1347 (Fed. Cir. 2004). Absent a challenge to examiner's credentials, the examination is presumed to have been conducted by an appropriately credentialed examiner. See Sickels v. Shinseki, 643 F.3d, 1362 (Fed. Cir. 2011); and Rizzo v. Shinseki, 580 F.3d 1288 (Fed. Cir. 2009). While the examiner's credentials have been questioned, all of the evidence points to the examiner being a physician. The April 2011 VA examination report and June 2012 supplemental opinion identify the examiner, by name, as the "examining physician," and the April 2001 spirometry report similarly identifies the examiner's name as the "physician." Under these circumstances, the Board finds the Veteran's challenge of the examiner's credentials unpersuasive. The Veteran has not presented clear evidence that the examiner was not a physician just because the name was not followed by a corresponding abbreviation for the medical professional. 

The Board finds that the pre-service documented history of tuberculosis, as noted in the Medical Board report, clearly and unmistakably establishes that the Veteran's tuberculosis existed prior to service. See 38 C.F.R. § 3.303(c). This finding is consistent with the Court's decision, which noted that the Veteran did not dispute this point.

The Board further finds clear and unmistakable evidence that the Veteran's tuberculosis was not aggravated by service. As an initial matter, the Board notes that the Veteran's in-service tuberculosis flare-up began just six days after enlistment. Furthermore, the Veteran's Medical Board report shows normal auscultation of the lung fields, chest x-rays within normal limits, and the remainder of the physical examination normal. Notably, the Veteran was discharged under Army Regulation 40-501 ¶ 2-25(b) for pulmonary tuberculosis active within the past 5 years, and not under ¶ 2-25(a) for active tuberculosis. Against this backdrop, the Board finds highly probative the VA examiner's opinion that the flare-up experienced by the Veteran in service was simply a re-emergence of no greater magnitude of the Veteran's pre-service tuberculosis bout that had required hospitalization. The Board recognizes that the Veteran has provided lay testimony contrary to this narrative stating that continued training caused worsening of his tuberculosis, but the Board finds this testimony wholly lacking in credibility. At his May 2015 hearing, the Veteran continued to state that he had never had tuberculosis prior to service, in the face of clear and unmistakable evidence to the contrary. Additionally, at his August 2006 hearing, the Veteran stated both that his tuberculosis was greatly worsened during service and that his tuberculosis was inactive at his nearly immediate discharge. The Board thus finds the Veteran to be an unreliable historian. 

Absent the Veteran's unreliable accounts, the clear and unmistakable evidence before the Board shows that the Veteran was not discharged for current symptoms, but was rather discharged once it was known that he had had active tuberculosis within the 5 years prior to service. His tuberculosis history came to light after he experienced pain in his side and volunteered the information, but no further symptoms of any kind were noted.

For these reasons, the Board finds that clear and unmistakable evidence shows that pulmonary tuberculosis preexisted service and was not aggravated during service. Service connection must therefore be denied. 

Asthma

The Veteran claims service connection for asthma, to include as secondary to pulmonary tuberculosis. 


Service treatment records do not reflect that asthma was found, complained of, diagnosed, or treated. The Veteran stated at his August 2006 hearing and his May 2015 hearing that asthma was diagnosed in or around service, and that he received private treatment for asthma soon after leaving service. The evidence contains no documentation of such treatment. Private treatment records indicate that the Veteran was treated for asthma in 2003 and 2004. 

As discussed above, clear and unmistakable evidence establishes that the Veteran's preexisting pulmonary tuberculosis was not aggravated by service. Thus, service connection based secondary to aggravation of pulmonary tuberculosis is not available to the Veteran. 

The Board finds that there is no credible evidence of an in-service event, injury, or disease potentially related to the Veteran's current asthma. The only evidence on the record indicating such an event, injury, or disease is the Veteran's own statements that his symptoms began during service, and that he was treated for asthma in service and soon thereafter. As discussed above, the Board does not find the Veteran to be a reliable historian, and affords no credibility to his statements, given his long history of inconsistencies in statements regarding his pulmonary tuberculosis. The Board therefore finds no credible evidence of an in-service event, injury, or disease potentially related to the Veteran's current asthma, and service connection must therefore be denied.

TDIU

The Veteran claims entitlement to a TDIU, which is warranted when a veteran's service-connected disabilities have rendered him unemployable/unable to secure and follow a substantially gainful occupation. In light of the Board's denial of the Veteran's claims for service connection discussed above, the Board finds that the Veteran is not currently service connected for any disabilities. The Veteran's claim for TDIU must therefore be denied as a matter of law. See 38 C.F.R. §§ 3.340, 3.341, 4.16; Sabonis v. Brown, 6 Vet. App. 426, 430 (1994).


ORDER

Service connection for pulmonary tuberculosis is denied.

Service connection for asthma, to include as secondary to pulmonary tuberculosis, is denied.

A total disability rating based on individual unemployability as a result of service-connected disabilities (TDIU) is denied.



______________________________________________
JONATHAN B. KRAMER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs